UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANDRES MEDINA-RUIZ,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, *et al.*,<br><br>Respondents. | Case No. C26-3000-MLP<br><br>ORDER |

Petitioner Andres Medina-Ruiz is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, a petition for writ of habeas corpus under 28 U.S.C. § 2241 asserting that his redetention on August 17, 2026, violated his due process rights under the Fifth Amendment. (Dkt. # 1.) Respondents filed a return (dkt. # 7), together with supporting declarations from ICE Deportation Officer Christopher Hubbard (dkt. # 8) ("Hubbard Decl.") and Respondents' counsel, Peter H. Clark (dkt. # 9) ("Clark Decl."). Petitioner filed a traverse. (Dkt. # 10.)

The Court, having reviewed the parties' submissions and the governing law, GRANTS in part the petition (dkt. # 1) for the reasons set forth below.[1]

## I. BACKGROUND

Petitioner is a native and citizen of Mexico, who had a prearranged appointment to enter the United States at the San Ysidro, California port of entry on December 27, 2024. (Dkt. # 1; Hubbard Decl., ¶ 3.) Petitioner, his wife, and their daughter "presented [their] passports, [a] CBP One application, and requested asylum," claiming a "fear of returning back to Mexico because of many deaths and robberies in [their] country." (Clark. Decl., ¶ 2 Ex. 3 at 3-4.) DHS served Petitioner with a Notice to Appear ("NTA"), charging him with inadmissibility under the Immigration and Nationality Act ("INA"). (Hubbard Decl., ¶ 3; *see* Clark Decl., ¶ 2, Ex. 1.) Petitioner was thereafter paroled into the United States until April 24, 2026. (Hubbard Decl., ¶ 3; *see* Clark Decl., ¶ 2, Ex. 2.)

On September 13, 2025, Petitioner was arrested by the Oregon State Police for DUI. (Hubbard Decl., ¶ 4.) On August 7, 2026, Petitioner pled guilty to Reckless Driving and DUI. (*Id.* ¶ 5.) Petitioner entered a diversion agreement for the DUI charge. (*See* dkt. # 1-4.) On August 17, 2026, Petitioner reported to the Portland, Oregon ICE office for a scheduled appointment. (Hubbard Decl., ¶ 6.) Officer Hubbard asserts that "[a]fter an individualized assessment of Petitioner as a danger to the community based on his recent arrest and guilty pleas, Petitioner was taken into DHS custody pursuant to a Warrant for Arrest of [Noncitizen]." (*Id.*) Petitioner was then transferred to the NWIPC, where he remains detained. (*Id.* ¶¶ 6, 8.) As of September 9, 2026, Officer Hubbard asserts that Petitioner is not scheduled for any future immigration court hearing. (*Id.* ¶ 8.)

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 5.)

On August 25, 2026, Petitioner filed the instant petition, challenging his arrest and redetention without first receiving notice and an opportunity to be heard, as violative of his Fifth Amendment due process rights. (*See* dkt. # 1 at 11-16.)

## II. LEGAL STANDARD

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner's sole claim challenges his August 17, 2026 redetention by ICE as violative of his procedural due process rights under the Fifth Amendment. (Dkt. # 1, ¶¶ 36-53.) He asserts that, under the framework articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), he was entitled to pre-deprivation notice and an opportunity to respond prior to being redetained. (*Id.* ¶¶ 30-34, 43-52.) He seeks release from custody. (*Id.* at 16.)

Respondents assert Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) as an arriving noncitizen and that, given the individualized assessment and determination that Petitioner's should be redetained due to his conviction, he was not entitled to a pre-deprivation hearing. (Dkt. # 7 at 5-10.)

### A. Statutory Detention Authority

The Court briefly acknowledges that Respondents contend § 1225(b) requires Petitioner's detention. However, Petitioner's claim is that the Fifth Amendment entitled him to procedural

due process. In other words, his claim is constitutional, not statutory. Accordingly, the Court need not consider Respondents' statutory arguments. *See Sarwari v. Wamsley*, 2026 WL 279968, at *3 (W.D. Wash. Feb. 3, 2026). "[T]he fact that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025).

**B. *Mathews* and Due Process**

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest. *Mathews*, 424 U.S. at 332. In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 07 (9th Cir. 2022); *see E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases). The Supreme Court has recognized that usually "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original) (discussing the *Mathews* test).

Both parties apply *Mathews* to the circumstances of Petitioner's redetention but reach opposite conclusions. (Dkt. # 1, ¶ 52; dkt. # 7 at 10.)

*1. Petitioner's Liberty Interest*

Respondents "recognize the weighty liberty interests implicated by the Government's detention of noncitizens" but contend that, because Petitioner was released under humanitarian parole, a "legal fiction" allowed the government to treat Petitioner as if he "had been stopped at the border." (Dkt. # 7 at 7-8.) Accordingly, Respondents contend that Petitioner has the same liberty interest as someone stopped at the border, even though he was paroled to live in the United States in December 2024. (*Id.* (citing *Pantoja Sanchez v. Hernandez*, 2026 WL 1506130, at *3 (W.D. Wash. May 29, 2026)).)

As this Court has recognized, courts in this District question and reject the extension of this "entry fiction" in the context of immigration detention. *See Rivero Guzman v. Hernandez*, 2026 WL 2883385, at *3 (W.D. Wash. Sept. 25, 2026) (citing *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023); *Torres v. Hermosillo*, 2026 WL 145715, at *4 (W.D. Wash. Jan. 20, 2026)). In *Torres*, the court recognized that release on humanitarian parole can establish a liberty interest in continued freedom from detention. *See Torres*, 2026 WL 145715, at *5 (collecting cases). However, courts also recognize the expiration of parole can affect the noncitizen's interest in remaining free. *See, e.g.*, *Vasquez v. Hernandez*, 2026 WL 2936770, at *4 (W.D. Wash. Sept. 30, 2026) (finding parolee's liberty interest "diminished by the fixed time she was granted for parole, the expiration of that time without seeking extension, and the government's prompt action to return her to custody when she was arrested shortly after her parole expired").

Here, Petitioner was paroled on December 28, 2024 until April 24, 2026. (Clark Decl., ¶ 2, Ex. 2 at 2.) Although there is no evidence Respondents sought Petitioner's return to custody after his parole expired, he arguably had a reduced liberty interest in remaining free past April

24, 2026. On the other hand, as further explained below, Petitioner's NTA directed him to attend an immigration hearing on October 14, 2027—a date obviously past Petitioner's parole expiration that Respondents do not acknowledge or explain. (*See id.*, Ex. 1 at 2; *see also, infra*, Part 2.) The Court therefore finds that Petitioner had an interest in remaining free until at least October 2027, which, under *Mathews*, weighs in Petitioner's favor.

*2. The risk of erroneous deprivation and value in additional safeguards*

In their return memorandum, Respondents contend that the risk of an erroneous deprivation was low because Petitioner's parole automatically expired in April 2026 and he "did not leave the United States." (Dkt. 7 at 8.) Accordingly, Respondents assert that, upon Petitioner's parole expiration, his status "reverted to the status he had when initially apprehended" and therefore, under federal regulations, "any further inspection or hearing shall be conducted under section 235 or 240 of the INA." (*Id.* (citing 8 C.F.R. § 212.5(e)(1)).) But Petitioner already had a hearing under section 240 scheduled for October 14, 2027—*i.e.*, nearly ten months *after* his parole was set to expire and which has obviously not yet occurred. (*See* Clark Decl., ¶ 2, Ex. 1 at 2 (NTA placing Petitioner into removal proceedings under section 240 of the INA).) Respondents do not acknowledge this fact, explain why DHS originally scheduled Petitioner for an immigration hearing on a date well beyond his parole's expiration, or discuss its legal significance as it relates to parole and their authority to redetain Petitioner. (*See generally* dkt. # 7.) Nor do Respondents address why it was important to detain Petitioner today when the original circumstances of his parole and future hearing date contemplated a future out-of-custody appearance.

The Court also observes that nothing in the evidentiary record shows ICE arrested and redetained Petitioner because his parole expired. Instead, Officer Hubbard simply asserts that

ICE agents took Petitioner into custody on August 17, 2026, because of an "individualized assessment" that Petitioner posed a danger to the community because of his "arrest and guilty pleas." (Hubbard Decl., ¶ 6.) Officer Hubbard does not declare that he has personal knowledge of that process, or that he conducted the assessment himself. (*See id.*) Thus, what that "individualized assessment" entailed, who conducted it, how it was conducted, and what findings were ultimately made, are unknown. Respondents will often provide a DHS Form I-213, which documents, amongst other things, any history of apprehension or detention by immigration authorities. (*See, e.g.,* Clark Decl., ¶ 2, Ex. 3 (Form I-213 documenting Petitioner's entry and parole in December 2024).) No Form I-213 related to Petitioner's August 17, 2026 redetention was provided. This court has no contemporaneous, first-hand evidence of what motivated ICE to redetain Petitioner or under what authority.

To the extent Respondents suggest Petitioner's DUI conviction was a violation of conditions of his parole, there is no evidence that DHS imposed conditions when they initially authorized Petitioner's parole. *See* 8 C.F.R. § 212.5(d) (authorizing, *inter alia*, designated officials to require bond or agreement to reasonable conditions when paroling noncitizens). Although the Court recognizes, and in no way minimizes, the risk posed by intoxicated drivers, the Court nevertheless observes that Respondents have provided almost no evidence connecting Petitioner's redetention to his DUI arrest or conviction beyond Officer Hubbard's otherwise unsupported statement that ICE determined Petitioner became a danger to the community due to his conviction. (Hubbard Decl., ¶ 6.)

Given this limited evidence, and the fact that Petitioner had a pending asylum application and was scheduled to attend a hearing in 2027, additional pre-deprivation process would have

been valuable in ensuring an erroneous deprivation did not occur. This factor weighs in Petitioner's favor.

*3. Governmental Interest*

Respondents assert a "strong interest in preventing [noncitizens] from remaining in the United States in violation of our law," which they further assert is "especially true when it comes to determining whether removable [noncitizens] must be released on bond during the pendency of removal proceedings." (Dkt. # 7 at 9 (internal quotations and citation omitted).) Respondents do not identify which law they believe Petitioner violated by "remaining in the United States" other than lacking lawful status—a fact they knew at the time they paroled Petitioner and a position that is difficult to reconcile with ICE's common practice of releasing noncitizens into the United States on various forms of release.

Respondents also assert an interest in "protecting immigration proceedings from unnecessary delay," dkt. # 7 at 10, but do not explain how Petitioner delayed proceedings or why that required redetaining Petitioner without notice or a hearing.

The Court finds it notable that Respondents do not mention Petitioner's DUI conviction in the context of the government's interest under *Mathews*. (*See* dkt. # 7 at 9-10.) The Supreme Court has acknowledged that civil immigration detention must be "nonpunitive in purpose" and bear a "reasonable relation" to the authorized statutory purposes of preventing flight and danger to the community. *Zadvydas*, 533 U.S. at 690 (citation omitted). The current record is almost entirely silent on these two purposes and Respondents do not argue that either purpose are served by Petitioner's redetention.

Immigration custody hearings are routine and impose a "minimal" cost, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094-95 (E.D. Cal. 2025), and Respondents have not identified

any interest that could arguably justify forgoing such pre-deprivation process. This third *Mathews* factor also weighs in Petitioner's favor.

In sum, the three *Mathews* factors weigh in Petitioner's favor. The Court accordingly finds that Respondents violated Petitioner's procedural due process rights when they redetained him on August 17, 2026.

**C. Remedy**

Having determined Petitioner was redetained without constitutionally adequate process, the Court now determines the appropriate remedy. Petitioner requests immediate release from immigration custody. (Dkt. # 1 at 16.) Respondents contend that Petitioner is not entitled to release and that § 1225(b) does not provide for release on bond. (Dkt. 7 at 1, 10.)

The Court finds that a prompt post-deprivation bond hearing is appropriate to cure the due process violation that occurred during Petitioner's redetention. Although the evidence is limited, Respondents have provided *some* evidence that an "individualized assessment" led to ICE determining Petitioner poses a risk of danger to the community due to his conviction. (Hubbard Decl., ¶ 6.)

Therefore, before requiring Petitioner's unconditional release, Respondents will be provided with an opportunity to demonstrate Petitioner's continued detention is necessary at a prompt bond hearing held before an immigration judge. At that bond hearing, Respondents will bear the burden and provide clear and convincing evidence that shows Petitioner poses a risk of danger to the community. *See, e.g., Caisa Telechana v. Hermosillo*, 2026 WL 696806, at *13 (W.D. Wash. Mar. 12, 2026); *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111-12 (E.D. Cal. 2025).

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

(1) Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED in part. Respondents must provide Petitioner with a bond hearing before an immigration judge within ten (10) days of this Order, at which the government bears the burden of proof by clear and convincing evidence that Petitioner is a danger to the community. Nothing in this Order prevents the Petitioner from requesting a continuance of the hearing.

(2) If a bond hearing is not provided within ten days of this Order, Respondents SHALL release Petitioner from ICE custody on the terms of his most recent release.

(3) Respondents SHALL file a status report with the Court confirming that Petitioner received a bond hearing by October 16, 2026.

(4) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

(5) The Clerk shall direct copies of this Order to all counsel of record.

Dated this 6th day of October, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge